IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

90.7763

**RUGS AMERICA CORP.,**

Plaintiff,

vs.

NO.

**KIRKLAND'S, INC.,**

Defendant.

# COMPLAINT

The Plaintiff, Rugs America Corp. (hereinafter "Rugs America"), files suit against the Defendants, Kirkland's, Inc. (hereinafter "Kirkland's"). The Plaintiff brings suit for breach of contract.

1) The Plaintiff, Rugs America, is a corporation with offices located at 10 Daniel Street, Farmingdale, New York.

2) The Defendant, Kirkland's, is located with offices at 5310 Maryland Way, Brentwood, Tennessee 37027.

3) The Court has jurisdiction over this pursuant to 28 U.S.C. §1332 as the parties are diverse and the amount in controversy exceeds $75,000.00.

4) Venue is proper pursuant to 28 U.S.C. §1391.

## FACTUAL BACKGROUND

5) On November 20, 2018, Bill Staubitzer (Executive Vice President of Rugs America) and Aaron Hakimian (President of Rugs America) traveled to Kirkland's office for a meeting with Mr. Steve "Woody" Woodward (President and CEO) and Lisa Fortune (Textile Buyer of Kirkland's).

6) At this time Kirkland's was not in the rug business and Plaintiff approached them with a vision and plan to start selling area rugs in their stores.

7) In April of 2019, an agreement was formulated between Mr. Woodward and Mr. Hakimian regarding the sale of rugs. As part of this agreement, the Plaintiff agreed to provide 275 state-of-the-art fixtures at no cost to Defendant to be used exclusively for the display and sale of Rugs America products only.

8) Attached as Exhibit "1" is a copy of the Letter of Understanding.

9) Approximately nine (9) months after the initial meeting, in September 2019, the Plaintiff rolled out a brand new category in Kirkland's Stores which included the delivery of 275 racks and approximately 40,000 area rugs.

10) In approximately August or September 2019, Cindy Ketzinger was hired by Defendant as a category manager "buyer" immediately after the launch of the program and delivery of goods to their warehouses.

11) In March of 2020, due to the COVID pandemic, home furnishings businesses accelerated significantly nationally across all retail chains.

12) On December 9, 2020, Bill Staubitzer and Aaron Hakimian traveled to Kirkland's to discuss overall business and present new products.

13) At this meeting, Lisa Fortune, and the new textile buyer Cindy Kretzinger, were present at the meeting.

14) Upon information and belief, Cindy Ketzinger was not supportive of the Letter of Understanding previously agreed to.

15) Upon information and belief, as soon as Cindy Ketzinger was hired she began to undermine the Letter of Understanding in favor of another supplier, Loloi, with whom she wanted to do business on behalf of Kirkland's.  As a result, the Defendant stopped using their best efforts to promote and sell the Plaintiff's products as they had agreed to do.

16) After the meeting, the Plaintiff visited several stores and noticed that the racks they had provided were empty because the plaintiff's rugs were liquidated to make room for another supplier which violated the written agreement attached as Exhibit "1".

17) On February 9, 2021, the Plaintiff received notice from Lisa Fortune of plans to purchase products from other suppliers in violation of the April 12, 2019 Letter of Understanding.

18) On February 11, 2021, Bill Staubitzer advised the Defendant that such action would violate their written agreement.

19) After several conversations, an agreement was reached whereby the Plaintiff allowed Kirkland's to display a maximum of 5 rugs out of 20 from other suppliers on the fixtures that had been supplied by the Defendant.

20) This modification was agreed to in an email dated March 11, 2021 by Amy Sullivan, the current CEO.

21) During the course of the relationship, the Plaintiff and its representatives visited several of the Defendants' stores. During the visits, the Plaintiff identified a super majority of rugs that were from other vendors and only a few of the rugs were from the plaintiff rugs from other suppliers hanging on the rug racks in all the stores that were visited. (See Exhibit "2"). This was in violation of the original agreement, and the modified agreement of March 11, 2021.

22) Throughout the course of the relationship, the Plaintiff has taken multiple actions to notify the Defendants of the violation of the agreement and asked for the correction of same. To date, the Defendants have ignored all requests and continue to violate the agreement that was entered into.

23) In 2019 the Defendants purchased $2.8 million of merchandise from Plaintiff. Numbers have continued to decline to $40,000 year to date in 2024.

### CAUSE OF ACTION

### Count I – Breach of Contract

24) The Plaintiff incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

25) Pursuant to Tennessee Code Annotated 47-2-306, the Defendant had an obligation to use their best efforts to promote the sale of the Plaintiff's goods, and they violated same.

26) Based upon the violation of the Defendants, the Plaintiff has suffered damages, and continues to suffer damages, that are ongoing.

### Count II – Breach of Implied Covenant of Good Faith and Fair Dealing

27) The Plaintiff incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

28) Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

29) The Defendant breached the implied covenant of good faith in failing to honor the agreement entered into and failing to maintain the Plaintiff's merchandise on the racks that were provided.

30) As a result of Defendants' wrongful conduct, the Plaintiff has incurred financial damages which are ongoing.

### Count III – Promissory Estoppel

31) The Plaintiff incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

32) Kirkland's promised Rugs America that they would exclusively show their products on the racks that were supplied at no cost to Kirkland's. Kirkland's promised to do this for 2 years per the Letter of Understanding. However, clearly per the letter of understanding Kirkland's was not allowed to put any other products except Rugs America's on the racks

indefinitely. Furthermore, Kirkland's at its own initiative and without notifying Rugs America removed approximately 100 racks from its stores.

33) Kirkland's breached the agreement, and as a result, Rugs America has suffered, and continues to suffer, financial damages.

34) In reliance upon the promise of Kirkland's, Rugs America provided the 275 racks at no cost to Kirkland's.

35) Rugs America relied to its detriment upon the promise of Kirkland's to be the exclusive provider of their product and Kirkland's breached same.

36) As a result of the breach, Rugs America continues to suffer financial damages.

### **Count IV – Fraudulent Misrepresentation/Fraud in the Inducement**

37) The Plaintiff incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

38) Kirkland's represented that they would exclusively market the product of Rugs America on the 275 racks to be provided at no cost to Kirkland's by Rugs America. Rugs America relied upon this promise.

39) This representation was false and Rugs America relied to its detriment upon the false representation made by Kirkland's.

40) The representation was made knowingly, recklessly and without belief in its truth.

41) Kirkland's intended for Rugs America to rely upon its representation.

42) Rugs America relied upon the representation. In reliance upon this representation, Rugs America incurred costs and expenses by way of supplying the 275 rug racks as part of the written agreement.

43) Kirkland's knew that Rugs America was relying upon its promise to be the exclusive provider of Rugs America products.

### Count V – Unjust Enrichment

44) The Plaintiff incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

45) The Plaintiff provided the Defendant 275 state-of-the-art racks to use to display area rugs. The racks were specifically designed by the Plaintiff.

46) The racks were originally provided so the Defendant could display the Plaintiff's rugs.

47) The Plaintiff has never received any compensation from the Defendant in exchange for the use of the Plaintiff's specially designed racks.

48) The racks were originally provided to the Defendant at no cost solely for the Defendant to use in displaying the Plaintiff's rugs. The Defendant breached this agreement.

49) The Defendant has continued to use the racks to display other suppliers' rugs with no compensation offered to the Plaintiff to date.

50) The Plaintiff has suffered damages as a result of the Defendant's deliberate failure to pay compensation to the Plaintiff for use of the racks.

51) Plaintiff has suffered damages, and continues to suffer damages, as a result of the Defendant's failure to pay compensation to the Plaintiff for the use of the Plaintiff's product.

52) The Plaintiff demands compensation as a result of the Defendant's conduct.

53) As a result of plaintiff's actions, the program that was established did not come to fruition and there is substantial loss of business for plaintiff.

54) The program set forth by Rugs America for Kirkland's was expected to generate $25 million in annual retail revenue. This figure was discussed verbally with Steve Woodward, Cindy Kretzinger, Lisa Fortune and current CEO Amy Sullivan on multiple occasions.

## Count VI – Damages

55) The Plaintiff incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

56) As a result of the breaches by Kirkland's as detailed herein, Plaintiff, Rugs America, has incurred damages including:

    a. Expenses incurred in providing the rug racks as agreed;

    b. Increased manufacturing needs;

    c. Expenses to increase manufacturing;

    d. Lost profits;

    e. Future lost profits.

**WHEREFORE, PREMISES CONSIDERED,** Rugs America asks this Honorable Court to grant relief as follows:

1) That Rugs America be awarded compensatory damages in the amount of $5,000,000.00 according to the proof at trial regarding same.

2) That Rugs America be awarded pre-judgment and post-judgment interest on the damage amount to be proved at trial.

3) That Rugs America be awarded with any such further relief as the Court deems just and proper under the evidence and circumstances proved at trial.

            Respectfully submitted,

            **McNABB, BRAGORGOS, BURGESS & SORIN, PLLC**

            */s/ Nicholas E. Bragorgos*
            NICHOLAS E. BRAGORGOS #12000
            Attorney for Rugs America Corp.
            81 Monroe, Sixth Floor
            Memphis, Tennessee 38103
            Telephone: (901) 624-0640
            Fax: (901) 624-0650
            nbragorgos@mbbslaw.com